## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARTLEY M. MULLEN, JR., individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>EXTENDED STAY AMERICA, INC. and ESH HOSPITALITY, INC.,<br><br>        Defendants. | Case No. |

### NATIONWIDE CLASS ACTION COMPLAINT

Plaintiff, Bartley M. Mullen, Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Extended Stay America, Inc. and ESH Hospitality, Inc. (collectively, "Defendants" or "Extended Stay America"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and its implementing regulations (the "ADA"), for declaratory and injunctive relief, attorneys' fees, expenses and costs.

### INTRODUCTION

1.      Defendants own, operate, franchise and have the right to control a network of economy, extended-stay hotels under the trade names of "Extended Stay America" (referred to as "hotels" throughout).

2.      Although Extended Stay America purports that their "spacious suites are meticulously planned to provide for [guests'] every need"[1], the needs of guests who have disabilities are not being met at Defendants' hotels. Defendants fail to offer individuals with

---

[1] https://www.extendedstayamerica.com/about/default.html (accessed on September 30, 2019).

disabilities a range of guest room options and amenities that are equivalent to the options and amenities offered to individuals without disabilities, including, but not limited to, the types of guest rooms, the number of beds, and the types of amenities offered.

3.     For Defendants' economy hotels, the practical effect of Defendants' failure to offer the same types of guest rooms and amenities to individuals with disabilities as those that are offered to individuals without disabilities is exclusion and a net reduction of budget-friendly transient lodging options, specifically extended-stay options, for a group of Americans disproportionately affected by low wages and underemployment: "[t]he average annual earned income for an American with disability is $26,487 – 38 percent less than for someone without a disability, according to a 2018 report by the American Institutes for Research. The Labor Department reports that only about 19 percent of people with a disability are employed, compared with nearly 66 percent of people without a disability."[2]

4.     To the extent Defendants do offer accessible guest rooms, Defendants fail to provide individuals with disabilities with an ADA-compliant reservation service that would permit individuals with disabilities to reasonably and independently assess whether Defendants' guest rooms meet his or her needs in the same manner as individuals who do not need accessible rooms.

5.     In failing to provide accessible rooms with the same options and amenities offered to guests without disabilities and ADA-compliant reservation services, Defendants have engaged in illegal discrimination, excluded and deterred individuals with disabilities from patronizing Defendants' hotels, and denied individuals with disabilities full and equal access to the goods,

---

[2] Joshua Brockman, *At Banks and Fund Firms, Access is Too Often Denied, Blind and Deaf Investors Say*, The New York Times (July 5, 2019), *available at* https://www.nytimes.com/2019/07/05/business/retirement-planning-disabled-deaf-blind.html

services, facilities, privileges, advantages, and accommodations that Defendants offer to individuals without disabilities.

6.    Defendants' discrimination violated and continues to violate Title III of the ADA, and unless Defendants are required to change their policies and practices so that Defendants' goods, services, facilities, privileges, advantages, and accommodations are accessible to individuals with disabilities, Plaintiff and the proposed class will continue to be denied full and equal access to Defendants' hotels and will be deterred from using Defendants' hotels.

7.    In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

a) Defendants change their policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities;

b) Defendants take all steps necessary to bring their hotels into full compliance with the ADA's requirements so that Defendants' hotels' guest rooms and online reservation systems are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; and,

c) Plaintiff's representatives shall monitor Defendants' hotels to ensure that the injunctive relief ordered pursuant to this Complaint has been implemented and will remain in place.

8.    Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate…. Illustrative are various actions in the civil rights field where a party is charged with discriminating

unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ACCESSIBLE TRANSIENT LODGING

9.     The ADA was signed into law by President George H.W. Bush nearly thirty years ago with the intent to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

10.     When the ADA's implementing regulations were revised in 2010, a regulatory impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." *Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design*, U.S. Dep't Just. (July 3, 2010).[3]

11.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

---

[3] Available at http://www.ada.gov/regs2010/RIA_2010regs/DOJ%20ADA%20Final%20RIA.pdf

12.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

13.     The ADA and its implementing regulations also define prohibited discrimination to include the following: (i) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992 (28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv)); (ii) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1)); and (iii) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2)).

14.     The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

15.    Both the 1991 Standards and the 2010 Standards require places of transient lodging, such as hotels, to provide a certain number of accessible sleeping rooms and suites, determined on a sliding scale based on the total number of guest rooms offered. 1991 Standards §§ 9.1.2-3; 2010 Standards §§ 224.2-4.

16.    The number of accessible guest rooms required is as follows:

| Total Number of Guest Rooms Provided | Minimum Number of Required Accessible Rooms Without Roll-in Showers | Minimum Number of Required Accessible Rooms with Roll-in Showers | Minimum Number of Required Rooms with Communication Features (2010 Standards) | Minimum Number of Required Rooms with Communication Features (1991 Standards) |
|---|---|---|---|---|
| 1 to 25 | 1 | 0 | 2[4] | 1 |
| 26 to 50 | 2 | 0 | 4 | 2 |
| 51 to 75 | 3 | 1 | 7 | 3 |
| 76 to 100 | 4 | 1 | 9 | 4 |
| 101 to 150 | 5 | 2 | 12 | 5 |
| 151 to 200 | 6 | 2 | 14 | 6 |
| 201 to 300 | 7 | 3 | 17 | 7 |
| 301 to 400 | 8 | 4 | 20 | 8 |
| 401 to 500 | 9 | 4 | 22 | 9 |
| 501 to 1000 | 2 percent of total | 1 percent of total | 5 percent of total | 2 percent of total |
| 1001 and over | 20, plus 1 for each 100, or fraction thereof, over 1000 | 10, plus 1 for each 100, or fraction thereof, over 1000 | 50, plus 3 for each 100 over 1000 | 20, plus 1 for each 100 over 1000 |

---

[4] The 2010 Standards uses a range of Total Number of Guest Rooms Provided of "2 to 25" for communication feature requirements, versus the 1991 Standards' "1 to 25".

*Id.*

17.     In addition to requiring the provision of accessible rooms, the ADA requires hotels to offer accessible guest rooms with an equivalent range of options and amenities that are offered in guest rooms available to individuals without disabilities.

18.     The 1991 Standards require accessible rooms to "be dispersed among the various classes of sleeping accommodations available to patrons of the place of transient lodging. Factors to be considered include room size, cost, amenities provided, and the number of beds provided." 1991 Standards § 9.1.4(1).

19.     The 2010 Standards are substantially similar, and require that accessible rooms "shall be dispersed among the various classes of guest rooms, and shall provide choices of types of guest rooms, number of beds, and other amenities comparable to the choices provided to other guests. Where the minimum number of guest rooms required to comply with 806 is not sufficient to allow for complete dispersion, guest rooms shall be dispersed in the following priority: guest room type, number of beds, and amenities. At least one guest room required to provide mobility features with 806.2 shall also provide communication features complying with 806.3. Not more than 10 percent of guest rooms required to provide mobility features complying with 806.2 shall be used to satisfy the minimum number of guest rooms required to provide communication features complying with 806.3." 2010 Standards § 224.5.

20.     The Advisory to Section 224.5 states that "[f]actors to be considered in providing an equivalent range of options may include, but are not limited to, room size, bed size, cost, view, bathroom fixtures such as hot tubs and spas, smoking and nonsmoking, and the number of rooms provided."

21.    The Department of Justice explained in its Guidance on the 2010 Standards that the "dispersion requirement is intended to effectuate Congress' directive that a percentage of each class of hotel rooms is to be fully accessible to persons with disabilities. *See* H.R. Rep. No. 101-485 (II) at 391. Accordingly, the promise of the ADA in this instance is that persons with disabilities will have an equal opportunity to benefit from the various options available to hotel guests without disabilities, from single occupancy guest rooms with limited features (and accompanying limited price tags) to luxury suites with lavish features and choices."

22.    To facilitate and ensure that individuals with disabilities can make reservations for accessible guest rooms, the Department of Justice promulgated 28 C.F.R. § 36.302(e), which provides:

A public accommodation that owns, leases, (or leases to), or operates a place of lodging shall, with respect to reservations made by any means…

(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;

(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

23.     The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

24.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

## JURISDICTION AND VENUE

25.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

26.     Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

27.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

28.     Plaintiff Bartley M. Mullen, Jr. is, and at all times relevant for purposes of this action was, a resident of Beaver, Pennsylvania.

29.     Plaintiff is a person with double, above-the-knee leg amputations, who uses a wheelchair for mobility. As a result of this mobility disability, Plaintiff is substantially limited in one or more major life activities, particularly with ambulation.  Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq.

30.     Plaintiff is both a tester in this litigation and a consumer who wishes to access Defendant's goods and services.  *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

31.     Defendant Extended Stay America, Inc. is a Delaware corporation, and is headquartered at 11525 N. Community House Road, Suite 100, Charlotte, NC 28277.

32.     Defendant ESH Hospitality, Inc. is a Delaware corporation, and is headquartered at 11525 N. Community House Road, Suite 100, Charlotte, NC 28277.

## FACTUAL ALLEGATIONS

**I.     Defendants Deny Individuals with Disabilities the Full and Equal Enjoyment of Defendant's Goods, Services, Facilities, Privileges, Advantages, and Accommodations.**

33.     Plaintiff travels from time-to-time in and around the western Pennsylvania region, and while traveling, he prefers to stay at a hotel. Plaintiff requires a mobility-accessible guest room to accommodate his needs as an individual with a mobility disability.

34.     In the summer of 2019, Plaintiff attempted to book a mobility-accessible room at Defendants' hotel located at 1303 Lebanon Church Rd, Pittsburgh, PA 15236 (the "Subject Hotel").

35.     The Subject Hotel offers studio suite guest rooms with bed sizes ranging from full to king size, with amenities and options such as refrigerators, microwaves, stovetops, and various furnishings.

36.     On information and belief, there are approximately 101 guest rooms available at the Subject Hotel.

37.     Plaintiff wished to stay in an accessible guest room with a king-size bed with all available amenities, and he was prepared to pay a premium for such options and amenities.

38.     When Plaintiff attempted to book a guest room with a king-size bed at the Subject Hotel, Plaintiff discovered through Defendants' online reservation service that Defendants only offer limited options for accessible guest rooms at the Subject Hotel. Specifically, while Defendants offer guests without disabilities rooms with full size beds, multiple beds, and king sized beds, the only option for individuals with mobility disabilities are guest rooms with one queen sized bed.

39.     Moreover, based on Defendants' online reservation system's limited, generic descriptions of the available accessibility features for accessible guest rooms, Plaintiff was unable to reasonably and independently discern whether a purportedly accessible guest rooms met his accessibility needs.

40.     The following image is a screenshot of the information provided by Defendants' online reservation system for purportedly accessible guest room that is presented to anyone seeking such a room:



41.    By clicking the small international symbol of access in the top margin, an information window appears:

 accessible room features                                    ✕

Extended Stay America provides accessibility features for our guests with disabilities. Accessible features available include but are not limited to:

- Access from site arrival points to the hotel entrance, including pedestrian paths to travel and curb cuts where needed.
- Accessible parking for vans and standard automobiles, including proper striping and signage
- Accessible access aisles.
- An accessible entrance with sufficient door width and level landings.
- An accessible registration counter.
- Accessible guest rooms.
- Accessible guest room bathrooms, with features for use by individuals with disabilities, including grab bars, accessible toilets, roll-in or tub showers, accessible controls, and other features.
- Auxiliary aids and services.
- If applicable, accessible pool lift.

Guests who have mobility disabilities may request bed frame removal to lower the surface of the bed. A guest with a mobility disability should provide the request for bed frame removal no later than forty-eight (48) hours in advance of check-in. If a guest with a mobility disability does not provide forty-eight (48) hours' advanced notice for bed frame removal accommodation, then the guest's request for bed frame removal shall be accommodated within forty-eight (48) hours of receipt of request by hotel management. If the forty-eight (48) hour period falls on a holiday or weekend, hotel staff will accommodate the request within seventy-two (72) hours.

Extended Stay America continues to enhance accessibility for guests with disabilities. For any individual needs that you might have, please call the following toll-free number or contact the specific hotel at which you plan to stay: 1-800-804-3724.

42.    While Defendants' online reservation system does provide general information about accessibility at their hotels and for guest rooms, there is no way to discern from the provided information whether any given purportedly accessible guest room is a mobility-accessible guest room or a guest room equipped with auxiliary aids, let alone what specific accessibility features, such as a roll-in shower, are present for the specific guest room that an individual may be seeking

to reserve. The same templated information is provided for any given purportedly accessible guest room.

43.    To acquire more information about a given purportedly accessible guest room, an individual with a disability would have to call Defendants' guest services.

44.    Plaintiff's experiences with Defendants' online reservation system left him frustrated and deterred because of the limited information, and he was further demoralized that he could not reserve the type of guest room he was seeking and that his only option for an accessible guest room was so limited.

45.    Plaintiff's experience is not isolated. Nearly all of Defendants' locations do not offer accessible guest rooms that are dispersed among the various classes of guest rooms offered to guests who do not need an accessible room, and do not provide choices of the type of guest rooms, number of beds, and other amenities comparable to the options provided to guests who do not need an accessible room.

46.    An investigation performed on behalf of Plaintiff confirmed that, in addition to the Subject Property, Defendants' other hotels across the United States fail to offer a range of equivalent accessible guest room options and amenities comparable to those offered to other guests. These hotels include, but are not limited to, the following locations:

a)    520 N Bell Ave, Carnegie, PA 15106;

b)    3851 Northern Pike, Monroeville, PA 15146;

c)    1303 Lebanon Church Rd, Pittsburgh, PA 15236;

d)    200 Chauvet Dr, Pittsburgh, PA 15275;

e)    3050 Schoenersville Rd, Bethlehem, PA 18017;

f)    1067 Highway 315 Blvd, Wilkes Barre, PA 18702;

g)      3216 Tillman Dr, Bensalem, PA 19020;

h)      537 Dresher Rd, Horsham, PA 19044;

i)      114 Welsh Rd, Horsham, PA 19044;

j)      8880 Bartram Ave, Philadelphia, PA 19153;

k)      9000 Tinicum Blvd, Philadelphia, PA 19153;

l)      877 N Pottstown Pike, Exton, PA 19341;

m)      300 N Morehall Rd, Malvern, PA 19355;

n)      400 American Ave, King Of Prussia, PA 19406;

o)      437 Irwins Ln, Plymouth Meeting, PA 19462;

p)      6199 San Ignacio Ave, San Jose, CA 95119;

q)      3318 California Ave, Bakersfield, CA 93304;

r)      7755 SW 6th St, Fort Lauderdale, FL 33324;

s)      6330 Peachtree Dunwoody Rd NE, Atlanta, GA 30328;

t)      855 Pasquinelli Dr, Westmont, IL 60559;

u)      9704 Beaver Dam Rd, Timonium, MD 21093;

v)      550 E 105th St, Kansas City, MO 64131;

w)      2000 Southwood Dr, Nashua, NH 3063;

x)      9651 Seward Rd, Fairfield, OH 45014;

y)      9025 Church St E, Brentwood, TN 37027;

z)      1908 Forest Ridge Dr, Bedford, TX 76021;

aa)      6807 Paragon Pl, Richmond, VA 23230; and,

bb)      325 N Brookfield Rd, Brookfield, WI 53045.

47.     For most of Defendants' hotels, Defendants typically offer a variety of types of guest room options, including but not limited to, rooms with one full-size bed, two full-size beds, one queen-size bed, two queen-beds, one king-size bed, suites with varying amenities, and additional options including fully equipped kitchens, desks, furniture, and smoking or non-smoking preferences.

48.     However Defendants offer minimal accessible guest room options, typically only offering the most basic options that are not comparable to the same choices of guest rooms and amenities provided to guests who do not need an accessible guest room.

49.     For example, of the investigated hotels listed above, despite a variety of options offered to guests who do not need an accessible guest room, 20 locations, or approximately 71%, only offer accessible guest rooms with a single queen-size bed; 2 locations, or approximately 1%, offer accessible guest rooms with two queen-size beds; 5 locations, or approximately 18%, offer accessible guest rooms with a king-size bed; and only 6 locations, or approximately 21%, offer two different options, and the remainder only offer one option.

II.     **Defendants Exercise System-Wide Control over Individual Hotel Operations.**

50.     Defendants are engaged in the ownership, management, franchising, operation, and development of hotels throughout the United States, including, upon information and belief, approximately 627 hotels across the United States, consisting of approximately 69,000 guest rooms.

51.     Defendants exercise extensive system-wide control of individual hotel operations, employing centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of their hotels, and Defendants have the right and ability to control all of their hotels.

52.    Defendants have implemented system-wide changes to their network of hotels: Extended Stay America "recently thoroughly refreshed all of our properties with major renovations at many".[5]

53.    Defendants also "inspect and review each hotel yearly to ensure that [their] rigorous company standards are met". *Id.*

54.    Despite Defendants' demanding standards for all of their hotels, and the fact that Defendants oversee and inspect individual hotels on a regular basis and require those hotels to implement changes necessary to fix existing problems, Defendants continue to operate and permit their hotels to remain in violation of the ADA.

## III.    Defendants' Discrimination has Injured Plaintiff and Individuals with Disabilities.

55.    As a result of Defendants' non-compliance with the ADA, Plaintiff's right to full, equal and non-discriminatory access to Defendants' goods, services, facilities, privileges, advantages, and accommodations has been denied.

56.    Defendants' failure to (1) provide accessible guest rooms dispersed among the various classes of guest rooms comparable to the choices provided to other guests, and (2) provide an ADA-compliant online reservation system, infringes Plaintiff's right to travel free of discrimination.

57.    Plaintiff has suffered, and continues to suffer, frustration, loss of independence, and humiliation because of Defendants' inaccessible hotels and Defendants' discriminatory practices, policies, and procedures. By continuing to operate their hotels with discriminatory conditions, Defendants contribute to Plaintiff's sense of segregation, and deprives Plaintiff of the full and

---

[5] https://www.extendedstayamerica.com/about/default.html (last accessed September 30, 2019)

equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations available to other members of the public.

58.     Plaintiff will be deterred from returning to Defendants' hotels so long as Defendants' hotels remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility, discriminatory conditions, and segregating individuals with disabilities.

59.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants' hotels and reservation systems, are fully accessible to individuals with mobility-related disabilities.

60.     Without injunctive relief, Plaintiff will continue to be unable to fully and equally access Defendants' hotels in violation of Plaintiff's rights under the ADA.

61.     As set forth herein, Defendants' policies, practices, and procedures are inadequate in that Defendants' hotels and online reservation system are operated in violation of the accessibility requirements of Title III of the ADA.

62.     Absent a change in Defendants' corporate policies and practices, discrimination and unequal treatment of individuals with disabilities are likely to reoccur in Defendants' hotels.

63.     Accordingly, Plaintiff seeks an injunction to modify the policies and practices that have created or allowed, and will create or allow, the limited, unequal and discriminatory provision of Defendants' goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities.

## CLASS ALLEGATIONS

64.     Plaintiff brings this action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure individually and on behalf of the following classes:

  a.  All persons with qualified disabilities who have attempted, or will attempt, to patronize any of Defendants' hotels in the United States and have, or will have, experienced discrimination because of Defendants' failure to provide an equivalent range of guest room choices available to other guests.

  b.  All persons with qualified disabilities who have attempted, or will attempt, to patronize any of Defendants' hotels in Pennsylvania and have, or will have, experienced discrimination because of Defendants' failure to provide an equivalent range of guest room choices available to other guests.

65.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

66.     Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

67.     Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make its facilities fully accessible and independently usable as above described. The questions of law and fact that are common to the class include, but are not limited to:

  a.  Whether Defendants own, operate, and/or control places of public accommodation subject to Title III of the ADA and its implementing regulations;

18

b.  Whether Defendants' online reservation system would permit individuals with disabilities to make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

c.  Whether Defendants' online reservation system would permit individuals with disabilities to identify accessible features in Defendants' hotels and guest rooms offered through Defendants' reservation service in enough detail to reasonably and independently assess whether a given hotel or guest room meets his or her accessibility needs;

d.  Whether Defendants provide accessible guest rooms that are dispersed among the various classes of guest rooms offered by Defendants;

e.  Whether Defendants provide choices of types of accessible guest rooms and amenities equivalent to the choices offered to guests who do not require an accessible room;

f.  Whether Defendants' policies and practices discriminate against Plaintiff and putative class members in violation of Title III of the ADA and its implementing regulations.

68.  <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

69.  Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION

### Violations of 42 U.S.C. §§ 12181, *et seq.*

70.     Plaintiff incorporates by reference the allegations contained in all prior paragraphs as if set forth fully herein.

71.     Title III of the ADA applies to Defendants because Defendants own, lease (or lease to), operate or have the right to control places of public accommodation.

72.     Defendants have failed, and continue to fail, to provide individuals with disabilities with full and equal enjoyment of Defendants' hotels. 42 U.S.C. § 12182(a).

73.     Pursuant to 42 U.S.C. § 12182(a), Defendants have discriminated against Plaintiff and the class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Defendant's hotels by failing to offer individuals with disabilities a range of guest room options equivalent to those offered to other customers.

74.     Defendants have further discriminated against Plaintiff and the class by failing to provide an ADA-compliant reservation service that would permit individuals with disabilities to make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms, as well as to identify accessible features in Defendants' hotels and guest rooms offered through Defendants' reservation service in enough detail to assess independently whether a given hotel or guest room meets his or her accessibility needs. 28 C.F.R. § 36.302(e).

75.     Defendants' failure to make reasonable modifications in policies, practices, and procedures to afford the goods, services, facilities, privileges, advantages, and accommodations

20

offered by Defendants to individuals with disabilities is discriminatory and in violation of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii).

76.    Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

77.    Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

78.    Given that Defendants have discriminated against Plaintiff and the class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered by Defendants to individuals without disabilities, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the class, prays for:

a.    A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Defendants have denied Plaintiff and the class full and equal access to Defendants' hotels by failing to provide accessible guest rooms dispersed among the various classes of guest rooms, with equivalent options and amenities offered to other guests;

b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that directs: (i) Defendants to change their policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities in full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Defendants' hotels are fully accessible to, and independently usable by, individuals who use wheelchairs, scooters or other mobility devices; (ii) Defendants take all steps necessary to bring their hotels into full compliance with the ADA's requirements so that Defendants' hotels' guest rooms, including guest room

showers, are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; (iii) Defendants to change their policies and practices to provide fully ADA-compliant reservation services as set forth in 28 C.F.R. 36.302(e); and (iv) Plaintiff shall monitor Defendants' hotels to ensure that the injunctive relief ordered above remains in place.

c.    An Order certifying the classes proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.    Payment of costs of suit;

e.    Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and,

f.    The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: September 30, 2019                                    Respectfully submitted,

                                                            */s/ R. Bruce Carlson*
                                                            R. Bruce Carlson
                                                            Kelly K. Iverson
                                                            Bryan A. Fox
                                                            **CARLSON LYNCH, LLP**
                                                            1133 Penn Avenue, 5th Floor
                                                            Pittsburgh PA, 15222
                                                            (412) 322-9243 (Tel.)
                                                            bcarlson@carlsonlynch.com
                                                            kiverson@carlsonlynch.com
                                                            bfox@carlsonlynch.com

                                                            *Attorneys for Plaintiff*